It please the court, Eric Moltoff on behalf of Appellant Mordick. The first point I would like to emphasize here is that the evidence in the case can fairly be categorized somewhere between underwhelming and constitutionally insufficient as to Mr. Mordick's guilt. And the three primary areas of deficiency were the time of death evidence militated against the finding that Appellant was the perpetrator. Second, the DNA evidence, which was a significant part of the prosecution's case at the 2008 trials, was primarily unhelpful in determining whether Appellant had actually deposited any blood around the crime scene. The only actual blood of Appellant's was found in a gym bag in a closet that had no identifiable relationship to the homicide. And the third point that I want to emphasize regarding the insufficiency of the evidence is that there was ample evidence of third-party culpability based on the DNA of other unidentified males on the clothing that was removed from the decedent and from a cigarette ash found on her inner thigh when she was finally discovered, particularly important given that neither she nor Appellant ever smoked. Strong evidence of third-party culpability. Today I would like to urge this Court in its exercise of de novo review of the District Court's ruling that Appellant was deprived of his Sixth Amendment constitutional right to present two key pieces of testimony of the neighbor who had a conversation with the decedent. She testified that the conversation occurred but was precluded from testifying that the decedent told her that the children had gone with Appellant and that she was using the weekend to pack. So by the time it got to the trial, her testimony, as I read it, was kind of a mess, frankly. So specifically, what's this, this is the Bonnie Piak, is that how you pronounce it? I've been saying Pioche. So what specifically was the testimony of hers that you think was improperly excluded? Because she did get to testify about something about the weekend. Yes, the crucial thing that she was precluded from testifying was that I'm here, I'm packing, but the children have gone with Appellant. And the significance of that was what exactly? If the children had already left and she was still alive, then Appellant could not have possibly killed her. So that's based on her grand jury testimony that this conversation happened on Saturday morning, is that right? Because she disavows that at trial. She disavowed the date, but not the conversation. So she disavowed that, she said maybe that happened the week before, maybe that happened Friday. Yes, true, Your Honor, true. But when we look at the testimony of Donna Holbrook, the other neighbor who was with the decedent the prior weekend, January 16th on a Sunday, the decedent was not packing. The decedent told Ms. Holbrook that she intended to switch custody with the defendant for the following weekend so that he could take the children to a birthday party and she could be home packing. I think the government brief said that the court allowed in the grand jury testimony for impeachment. Is that correct? Some of it, but not the part in which she said that the children are not here, they've gone with Appellant already. And that's the key piece of exculpatory evidence. So the part that was allowed in for impeachment was the whole deal about what they had happened on, right? Yes, primarily. Your Honor accurately characterized the testimony as a whole as something of a mess, but when it's viewed in context of the other testimony, it's compellingly exculpatory because Donna Holbrook clearly set the stage that there was only one weekend when the birthday party and the packing were going to occur simultaneously. And Ms. Holbrook added the important fact that when she was personally present and Appellant and the decedent were making these arrangements the week before, the original arrangement was for Appellant to pick the children up on Friday evening and bring them back on Sunday. In fact, Appellant picked them up on Saturday 12 hours later, so the plan shifted. But the original plan was for him to pick them up on Friday, and that may well explain why Ms. Piotr was confused, mistaken about that. So there's a piece of exculpatory evidence that, credited by the jury, was flatly exculpatory. Now we have a second piece of evidence that's equally exculpatory, which is unfortunately excluded, the statement of four-year-old Elise Mordek that Appellant picked them up right after breakfast. We know from the undisputed forensic testimony that she was killed between two and four hours after she had eaten breakfast. If Appellant was the perpetrator, the killing had to occur between approximately 10 o'clock a.m. and 10.30 a.m. in the morning. So breakfast had to have been concluded between 6.30 in the morning and 8 or 8.30. Now the statement by young Elise is extremely reliable in the sense that there was a police officer present when she made it close in time to the occurrence. There was an aunt asking her the questions, and she was responding in a... Well, it's not the question. I don't think the reliability question is whether she made that statement. Reliability is what does a four-year-old mean when she says right after, right? Isn't that where the basis for the ruling is? Yes, that's the basis for the ruling. And the ruling shows a distinct lack of common sense and respect for the jury to be able to sort out the weight to be given testimony like this. No, but there's a gatekeeping function that the trial judge has to determine some minimal basis of reliability before the judge needs to admit the evidence, right? Of a four-year-old? Isn't that right? You agree with that? There's a balancing that the judge has to do. There's no minimum threshold. If a witness comes in and says, I saw the defendant in Cincinnati on the night of the crime that occurred in California, that's totally admissible even if that person has 15 felony convictions. It's a jury question at that point. There's only a balancing that can come in if there's something that outweighs the probative value. And here the common sense tells us that if breakfast was completed between the hours of 6.30 and 8.30 in the morning and a full hour and a half at the very least had elapsed between the time the child would have done other things, watched a video, played with her sister, done something, and the last, there would have been no reason for her to say, Daddy came and picked us up right after breakfast because there had to be, according to the forensic testimony, a good hour and a half to two hours or more of intervening time when other events would have occupied the time marker for when this occurred. So given the fact that by the time of the trial she was saying that the statement wasn't on Saturday, it was on Friday, the court reporter got it down wrong, all of that, you wouldn't have expect her, I know you weren't the trial lawyer, but the trial lawyer wouldn't have expected her to say from the stand at trial that it happened on Saturday. So how was the other statement going to come in through just putting in the grand jury testimony? Oh, if it had been deemed admissible. In other words, you weren't going to get this or the trial counsel was not going to get this out of Ms. Piak herself from the witness stand at the criminal trial. It was going to come in by putting in a grand jury testimony. It had to be a prior inconsistent statement, yes. Okay. Those are my points and I'd like to reserve a small amount of time for rebuttal. All right. We'll hear from the government. Good morning and may it please the court. I'd like to address the three different items of evidence mentioned by the participant on the appeal. First of all, he contends that the timing, the estimated timing of death as indicated by the evidence is not reflective of guilt, but the evidence was that did not exclude the theory, the prosecution's theory of timing, which was around 10 a.m. The experts at trial estimated that the death occurred 24 to 36 hours prior to the autopsy. That window extended to approximately Saturday afternoon and a 10 a.m. timing would have been approximately 40 hours prior to the autopsy. The experts at trial said that they could not exclude that time window. So that takes care of the timing issue. As for the DNA, it's pretty interesting. There were bloodstains found throughout the house. One was on a rear sliding door of the house and the other one was on a bathroom sink, a downstairs bathroom sink. DNA evidence showed that the petitioner's DNA was mixed with the victim's DNA in those bloodstains. Now the contention is that because the petitioner lived in the house until about three months prior to the murder when he moved out, that he could have left his DNA randomly around the house and that's how it happened to be found inside the victim's blood. There was testimony showing that the DNA in the blood sink would have deteriorated through regular use of that sink. So that indicated that the bloodstain on the sliding door, this is really interesting, the prosecutor in closing pointed out that that bloodstain consisted of not just the DNA, which actually it pointed to which petitioner had a ratio of one in 20 billion people, but also that blood was determined through, it was in 1983, serology testing, PGM testing. PGM testing, DNA can be deposited through, for example, hair or skin cells, but serology testing requires blood or semen or vaginal fluid. It's very specific. So the fact that the PGM testing on the blood on the sliding door was consistent with the petitioner indicates that it was not just random DNA that was left there, but it was actually his blood there that was mixed with the victim's blood. And so that's very powerful evidence right there and so on that point I think that the petitioner he underestimated the strength of the DNA evidence that was presented in that trial. Now for the alleged evidence of a third party perpetrator. Well the bottom line is that disrupting evidence happens in virtually all criminal trials. It is the function, it is the province of the jury to sift through the evidence and reach a verdict. And that is precisely what happened in this case. Habeas relief is reserved for extraordinary error in the criminal justice system. It is not a place to re-litigate evidence that's been presented in that trial. And that is what the petitioner is asking this court to do here is to re-weight the evidence. Do you agree, moving to the excluded testimony, do you agree that we're reviewing that not through the lens of AEDPA, we're reviewing that just as de novo habeas review? I'm sorry, are you talking about the hearsay testimony relating to the neighbor? The evidence from that, the petitioner made a claim that the Pioche testimony and the Elise testimony was erroneously excluded. And the opposing counsel argues that we're not reviewing that under AEDPA. Do you agree? No. This is an area that requires AEDPA deference review as opposed to de novo review. Well, doesn't that require that the state court actually rule on that issue? That's right. And did the state court, let's take the neighbor first. Did the state court rule on the constitutional objection? The evidence, the record, it supports a presumption that it did. Under Harrington v. Richard and Johnson v. William, or William v. Johnson, there is a presumption that silent denial constitute a rejection on the merit. But he spent, at least on the Pioche, there wasn't that much on Elise, but there was a good page and a half, a couple of pages on Pioche testimony and citing chambers. And under Johnson v. Williams, we would have to say, well, it was too late. Is that what you're arguing? Yes. And the reason is because it has to do with the nature of it. The federal constitutional claim is the chamber's claim. The chamber claim basically has three elements. There must be an arbitrary or mechanistic application of state evidentiary rules that result in the exclusion of trustworthy or reliable evidence that is critical to the defense. The state court, in this instance, found that the rule that the hearsay evidence was inadmissible under state evidence rules, evidence rules 1250 relating to a state of mind hearsay exception. There's really no dispute that it was hearsay. The question is whether it fell within the hearsay exception and it did not. The state court found that it didn't. And another thing is that in trial, the trial court excluded that evidence being unreliable under state evidence rule 352. So the record shows two different state evidentiary basis for excluding that evidence. So the state court on appeal resolved the evidentiary claim against the defendant. So the resolution of those evidentiary claims shows that it was not an arbitrary or unthinking application of the evidentiary rule. The evidence was valid justification in line with the very purpose of those hearsay evidence rules. But as you just explained, the grounds that the state court relied on were purely state court evidentiary grounds, right? It didn't address the constitutional issue. Well, yes. And this is because once you resolve the state evidentiary rules against the defendant, you're saying that this was not an arbitrary application of the rules of evidence, that in itself forecloses a chambers claim because chambers require that the application of the evidentiary rules be arbitrary or mechanistic. And it wasn't in this case. So since the defendant can't show that it was an arbitrary application of the rules of evidence, then there is no chambers claim. And in that regard, it can be deemed as too insubstantial to merit discussion. In other words, resolving the evidence, the state evidence issue basically pulled the rug out from underneath the chambers claim. So it would have been superfluous to address chambers at that point. Can I ask you about the merits of the neighbor's testimony? So what was it or what is it that made the testimony that the defense says was wrongly excluded unreliable? What specifically? Because they could not pinpoint the time during which that statement was made. Isn't that really a function, though, of the fact that this testimony has all happened so long after the murder? I mean, isn't it inherent in the fact that you're asking people 20 years later, 25 years later, when something happened, that there's going to be some uncertainty about when? It's possible. The thing is, when the trial court evaluated this issue, it noted that the potential for misleading the jury. Because if the neighbor could not testify, I mean, if the jury could not really determine when that statement was made, it could have misled them. Because if the jury had been led to believe that that statement had been made on the weekend of the murder, when in fact it had actually occurred the weekend before. Well, but that's what the dispute's about. I guess my point is that when you have a trial that's taking place so long after the actual events, all of the testimony that's presented is likely to be, tainted is the wrong word, but it's likely to be affected by the fact that so much time has passed. And I guess I'm questioning why this particular bit of evidence is singled out as being unreliable when the jury, in dealing with pretty much everything it had to deal with during the trial, would have had to deal with those same kinds of issues about passage of time. I know that was kind of a convoluted question. Sorry about that. I think the prosecution moved to exclude the evidence, so it was analyzed anew at the new trial. The evidence had potential. The defense was emphasizing that this evidence showed that the murder took place after the defendant left the house. So I think there was a pronounced potential for this evidence to mislead the jury if it could not be established with any degree of reliability when the statement was made. And the neighbor at trial, she was adding that the last time she had seen the victim was the Friday prior to the murder. I get that. And there are other things about this statement that throw into a serious question the reliability about when it was made. Well, first of all, the trial records show that the defendant in fact had his children with him the weekend prior to the murder. That weekend prior to the murder, I believe the record also shows that the defendant dropped his children off on the Sunday afternoon. The statement at issue says that the kids are with the defendant and he will bring them back on Sunday. Well, they were with the defendant the weekend before and he brought them back on Sunday. And now this is a pretty interesting note. And our respondents in the answering brief, the footnote, there was a footnote out there that mentioned that if it were true that the defendant had the kids with him that weekend and would have brought them back on that Sunday, well, he never returned on the Sunday afternoon of the murder. The body was found by somebody else late Sunday night. And so it's that constellation of facts or circumstances around the statement that rendered it inherently unreliable. And so the trial court was within very valid basis to exclude that evidence as being unreliable at trial. And then on appeal, it was found not to be, it was hearsay that did not fall under the state of minus section. So again, it really goes back to this being a valid and justified application of state evidentiary rule. And once we have that laid in place, and then there really cannot be a due process violation. Chambers requires that it be an So getting back to the standard of review, resolution of the state claim automatically entails resolution of the federal claim. Now Johnson v. Williams is rather clear, and it says it says that the presumption of resolution of the merits of a federal claim can be rebutted where the evidence leads barely clearly to the conclusion that it was inadvertently overlooked by the state court. Well, the district court in this case said that, in its words, it said it was not entirely clear whether the state court addressed the Chambers claim. Not entirely clear is not the same as leading barely clearly to rebutting the presumption of a merits-based resolution. And because the evidence rules applied here were not arbitrary or irrational, it preordained a Chambers result. So the state court should be deemed to have rejected a federal claim on its merits, even though it did not expressly address that claim in its decision. I believe that concludes my argument. If this court does not have any further questions, we will submit. No. Apparently not. Thank you. We have some time for rebuttal. Five to four points. Back to the evidence regarding time of death. The weight of that evidence casts a tremendous pall over the validity of the evidence. Deputy Coroner, who signed the official death certificate, said that the death occurred between 3 p.m. on Saturday afternoon and 3 a.m. on Sunday morning, which completely exculpates Mr. Morduch. At trial, that same deputy coroner, when questioned at length, said it was conceivable that the death could have occurred as early as 10 a.m. on Saturday morning. But in terms of the weight of the evidence and the persuasive power, that militates in favor of an acquittal. The fact that it's conceivable that it could have occurred at 10 o'clock without any clear evidence that it did occur at 10 o'clock is a tremendous weight against upholding the evidence. On appeal, this court has to weigh the evidence that was offered in support of the evidence to see whether it meets the Jackson v. Virginia standard. And when determining prejudice from the erroneous exclusion of evidence, the court has to look at the totality and the weight of the prosecution's evidence to see whether the exclusion might have made a difference in the outcome. That's why I'm emphasizing that point, Your Honor. We're certainly looking at AEDPA review for the sufficiency claim, isn't that right? Yes, Your Honor. And so there we have double deference. We're not applying Jackson ourselves. We're saying, could a state court reasonably have concluded that any rational juror could have found that there was sufficient evidence to convict? In principle, Your Honor, that's true. But as a matter of practice, either it was sufficient evidence or insufficient evidence, and it was unreasonable to conclude sufficient evidence, then this double deference is some kind of legal fiction that doesn't really assist the court's review. That's my view on this front. But with respect to the other two claims, the court must make de novo review because the Johnson v. Williams presumption applies primarily in the situation where, as two members of this court are very familiar with, when the California Supreme Court denies the habeas corpus petition, the petition is denied. That's presumed to be on the merits of all the federal constitutional claims there, because that's practice, and California presumably followed the practice. When the state court of appeal issues an opinion, it's bound by the California Constitution to issue a written decision as to each issue presented by the appellant. And here we have a conspicuous absence of any reference whatsoever to the two cases, and it's important to take somewhat in the nature of judicial notice that the unpublished opinions of the California Court of Appeal are not always done with the rigor of this court's issued opinions, and taken together, this shows that the court of appeal just did not get to the federal constitutional claims. That's my argument in favor of taking a review by this court. When the court of appeal, and they're obligated to address all of them, they address less than all of them, there's a presumption that it didn't address the ones that are not mentioned, as opposed to the California Supreme Court instance where the blanket ruling. Quickly, with respect to counsel's emphasis on the point of Ms. Piotr's statement was unreliable and therefore excludable, because appellant did not bring the children back on Sunday, counsel overlooks the fact that the original plan according to Ms. Holbrook was that appellant would pick the children up on Friday and bring them back on Sunday. We know that there was a change in the plans because he picked them up on Saturday morning, a day later, and the obvious inference is that, well, he was going to keep them an extra day also so he'd have his full two days of visitation, bringing them back on Monday. So far from being a dagger in the heart of Ms. Piotr's statement, the fact that he didn't bring them back on Sunday is very consistent with the shift from the pickup on Friday night to the actual pickup on Saturday. My last point relates to... You're out of time, so please... My last point is a one sentence one, and I have to say when there's an unusual passage of time like this, it's a real violation of due process and the right to present a defense when the inherently increased lack of recollection is uniformly applied to the defendant's detriment. And with that, I'm going to submit. Thank you. We thank each party for their arguments. The case of William Mordick v. Alvin Valenzuela is submitted.
judges: Tashima, Ikuta, Kennelly